LOUISA T. CLARK *vs.* JOB W. COREY.

PROVIDENCE—APRIL 30, 1902.

PRESENT : Stiness, C. J., Tillinghast and Blodgett, JJ.

(1) *Breach of Marriage Promise. Accrual of Right of Action.*

Where there is a subsisting contract of marriage, but without a date fixed for its performance, the law construes it to be a promise to marry within a reasonable time upon request; and an action for breach of such promise cannot be brought, where no demand was made upon the de-

fendant before the commencement of the suit, and the defendant had neither incapacitated himself for the performance nor by his acts rendered such demand unnecessary.

TRESPASS ON THE CASE for breach of marriage promise. Heard on petition of defendant for new trial, and petition granted.

BLODGETT, J.    After verdict for the plaintiff in an action for breach of promise of marriage, the defendant has petitioned for a new trial.

The plaintiff's testimony is to the effect that on November 24, 1899, the defendant promised to marry her on November 28, 1899.    She had spent the day with him in Pawtucket and in Providence, leaving him under the influence of liquor in the evening on a street in the latter city.    Later in the evening of November 24th the defendant was arrested by the police, for intoxication, locked up in the station-house that night and fined therefor in the police court on the following morning, and was then taken home by his friends, placed in bed with an attack of *delirium tremens*, followed by *endocarditis*.

On December 23, 1899, while the defendant was still confined to his home, the plaintiff instituted an action against the defendant for damages for breach of promise of marriage. This action was partially tried on May 16, 1900, and on June 9, 1900, was discontinued by the plaintiff.    On July 13, 1900, the present action was instituted without communication of any kind between the plaintiff and defendant meanwhile, and in that action the jury have rendered a verdict for the plaintiff for $5,000 damages, with special findings.

Several questions are presented on the record, and by the exceptions, but inasmuch as a vital question is presented by the third exception, we do not consider the other questions raised.

The defendant's third request to instruct the jury was as follows :

"Third.    Unless the jury find from the evidence that the plaintiff offered to marry the defendant, or requested the de-  .

fendant to marry her, after the discontinuance of her first action and before the beginning of the second action, they must find a verdict for the defendant." This request was denied, and the defendant duly excepted thereto.

(1)    We are of the opinion that the instruction asked for by the defendant should have been granted.

The plaintiff's evidence shows a promise of marriage made on November 24, 1899, to be performed on November 28, 1899. The jury have found, specially, "that the defendant was not physically able to marry on November 28, 1899." This leaves the parties with a subsisting contract of marriage between them, but without a date fixed for its performance. In such case the law construes the obligation as one to be performed within a reasonable time upon request, unless one of the parties has incapacitated himself for the performance—as, by marrying another—or has by positive and unequivocal acts or declarations rendered a tender or demand unnecessary. In the case at bar it is not claimed that the plaintiff ever made any such request or offer between November 28, 1899, and December 23, 1899, when she brought her first action against the defendant. So long as that action was pending, the defendant was justified in assuming that the plaintiff no longer desired a performance of the promise, but preferred, rather, damages for the breach of it. That action was discontinued on June 9, 1900, and the present action was begun on July 13, 1900. The jury have further specially found "that the plaintiff did not offer to marry the defendant or request the defendant to marry her after the discontinuance of her first action and before the bringing of the present action." Indeed, from the failure of the plaintiff to visit the defendant at any time during his illness, or to otherwise communicate with him, we think that the defendant was entirely justified in concluding that she was no longer willing to become his wife.

In *Cole* v. *Holliday*, 4 Mo. App. p. 98, the court say : "The contract is binding, though the precise time of completing it is not agreed upon, and in such a case the law construes it to be a promise to marry in a reasonable time, upon request.

Where the promise does not contain and fix the time, a special request must be laid in the declaration and proved on the trial, unless the defendant by marrying another has incapacitated himself from performing his engagement, in which case that fact should be alleged." And, again, p. 99, in speaking of the case then before the court, the opinion continues, in words which are equally applicable to the case at bar : " There was a delay which may have been unreasonable, but evidence of delay is not evidence of refusal, but rather evidence that the contract was abandoned by mutual consent. In any case where there has been no request upon the defendant to fulfill the contract, and the contract was indefinite as to time, there is no cause of action. 2 Pars. on Cont. 6th ed. 63, 64. As to what will constitute a tender or refusal, there may be some question, but that an offer of some kind and a refusal of some sort must be alleged and proved if denied, there can be no question." And on p. 103—" We are of the opinion that the plaintiff in an action of this character must allege and show not only that the defendant did not marry her, but also that she was willing and offered herself to marry him and that he refused her, before suit was brought, or at least that he refused her positively and unequivocally so as to relieve her of all necessity of making an actual tender of herself to him to marry him."

In *Kelley* v. *Brennan*, 18 R. I. 41, it was conceded that the general rule was as above stated, but the court say of it later : " This latter point, however, it is not necessary to determine, for the testimony shows a positive refusal by the defendant to marry the plaintiff before the suit was begun. Such refusal was a breach of the defendant's engagement to marry the plaintiff and dispensed with the necessity of an offer on the part of the plaintiff to marry the defendant before bringing suit, if such an offer would otherwise have been necessary," and see cases cited.

In *Prescott* v. *Guyler*, 32 Ill. 323, the court say : " Nor need such request be made by the plaintiff herself. It may be made by her father or other friend,. whose authority to do

so may be inferred from the relations existing between the parties."

If it be conceded that the intoxication of the defendant on November 24 was not known to the plaintiff, nevertheless there is no evidence that such intoxication was caused for the purpose of incapacitating himself for the performance of an agreement not to be performed until November 28. Nor can such intoxication be presumed, as matter of law, to result in an attack of *delirium tremens* four days later.

The declaration contains several counts, but the only count averring special damage is the following :

"And also, for that on to wit, June 26, 1899, at to wit, said Providence, in consideration that the said plaintiff at the defendant's request, then and there promised to marry the said defendant, the said defendant, to wit, then and there, in consideration thereof, promised the plaintiff to marry her, and also to give her on the day or on the day before her marriage to him, the sum of ten thousand dollars, and also in addition thereto, to convey to her on or before her marriage to him, a house and land at to wit, Weymouth Heights, Mass., of the value of, to wit, six thousand dollars, and the said plaintiff relying upon said defendant's undertakings and promises, as aforesaid, promised said defendant to marry him, and has always been ready and willing from thence hitherto, upon the performance of said defendant's said promises by him to marry him, of which said defendant had notice. Yet said defendant not regarding his said promises, hath not married said plaintiff, nor has he, said defendant, performed any of his other said promises, but hath neglected and refused so to do, although a reasonable time has elapsed since the making of his said promises to said plaintiff and still neglects and refuses so to do, and the plaintiff avers that after the making of said promises the said defendant gave to said plaintiff a ring in token of their mutual engagement to marry, and also, induced her to purchase her wedding trousseau, and also arranged for their marriage ceremony by mutually agreeing upon the persons who should be bridesmaid and groomsman at the time of their said marriage, and otherwise indicated

his purpose to marry her, said plaintiff, according to his said promise aforesaid."

Of the allegations therein contained, we may say that even if any agreement of marriage was made between the plaintiff and defendant on June 26, it is not claimed by the plaintiff that the time for the marriage was then fixed, and the subsequent conduct of the parties fails to show that any day was finally agreed upon therefor until November 24. The evidence clearly shows that the defendant owned no property at Weymouth Heights, Mass., and the defendant testifies not only that he, a newspaper reporter, did not promise to give her $10,000 on their marriage, as the plaintiff avers, but that he has absolutely no property whatever.

In this count the plaintiff in direct terms avers that she has failed to receive property of the value of $16,000 which she expected to receive at her marriage to the defendant, and makes this failure a specified ground of damages. If she were prosecuting her suit against the defendant in any other form of action for the recovery of this property, or for the recovery of damages for the failure to convey or deliver the same to her, she would unquestionably be required to prove her own compliance with all the conditions to be performed by her before she could maintain her action. That the plaintiff is a woman, and that the action is of this nature, do not relax the rule of law in her behalf.

We think that the least that the plaintiff in this case should have done, after she learned of the defendant's condition on November 28, 1899, and before she can maintain a suit for damages against him, was to cause him to be notified, at some time when he was admittedly sober and *compos mentis*, that he had obligated himself to marry her and that she on her part was ready to perform the agreement.

But in the case at bar there has never been, since November 28, 1899, any request made of the defendant, by or on behalf of the plaintiff, that he should marry her. The bringing of her actions against him for damages for a breach of his agreement is, of course, precisely the opposite of requesting him to fulfill the agreement.

We do not see upon the evidence before us that the present action can be maintained, and we therefore direct that the case be remitted to the Common Pleas Division with direction to enter judgment of nonsuit for the defendant.

TILLINGHAST, J., dissenting. I am unable to concur in the foregoing opinion.

The jury found that the defendant promised to marry the plaintiff, as alleged in the declaration, and the evidence submitted abundantly supports this finding.

In reply to a request by the defendant for a special finding, the jury found that he was not physically able to marry on November 28, 1899, which was the day which had been finally agreed upon by the parties for the wedding to take place.

The jury further found, specially, however, at the defendant's request, that from November 28, 1899, to July 12, 1900, the latter date being the last day before the suing out of the writ in this case, the defendant was physically able to marry ; and also that the plaintiff's willingness and readiness to marry the defendant did not cease upon the beginning of her prior action against him.

The evidence shows that the only reason why the defendant was physically unable to marry on the said 28th day of November, 1899, was that he was ill from the effects of having been drunk on the 24th day of November, 1899. And the practical question which is presented for our decision, as I understand it, is whether a man can make himself ill just before his wedding-day, and subsequently, when sued for not fulfilling his promise of marriage, be permitted to set up his physical disability, thus voluntarily caused, in defence of the action. I do not think he can. To allow such a defence is to permit one to take advantage of his own wrong, which the law will not do. If, by making himself drunk, the defendant rendered himself incompetent to perform his promise on the day set, by reason of the effects of his drunkenness, this was no excuse for his failure to perform it as soon as he recovered from such illness. And, according to the finding

of the jury, he was only physically incompetent to perform it for one day.   But, conceding that the evidence shows that he was disabled for a longer time than this, it was clearly his duty, in my judgment, being in default as aforesaid, to have been ready and willing, and to have offered to fulfill his contract with the plaintiff immediately upon recovering from his illness.   And I do not think that, under the circumstances, the plaintiff was called upon to go to the defendant, after such a default and before bringing her action, and say "I am ready to marry you now, please marry me," or in some other way to have offered to perform her part of the agreement.

In *Kelley* v. *Brennan*, 18 R. I. 42, this court said : " It may be true that in cases in which the promise to marry is general, that is, in which no time or place of marriage is fixed in the promise or in which the promise is to marry within a reasonable time, or upon request, and in which, also, the defendant had not married another, it is necessary for the plaintiff to aver and prove an offer of marriage and a refusal by the defendant, since in such cases it may not be possible for the plaintiff otherwise to show that the defendant is in default.   .   .   .   But in the note last cited it is said that if, after an engagement to marry and the lapse of a reasonable time, or the time agreed upon between the parties, the gentleman omits to offer to marry, it is generally considered a refusal to marry, and the language of the court in *Seymour* v. *Gartside*, 2 Dowl. & Ry. 55, is quoted that it can hardly be expected that a lady should say to a gentleman 'I am ready to marry you, pray marry me.' "

The case at bar, as it seems to me, practically comes within the rule as thus stated.   The time for the marriage had been agreed upon, and the defendant had failed and *refused*, in effect, to perform his promise and thereby rendered himself liable to be sued for the breach thereof.   In any event, his duty was to have offered to marry the plaintiff as soon as he recovered from his temporary illness, which he did not do.

Under the decision of the majority of the court, the plaintiff will have the right to hereafter request the defendant to

marry her in pursuance of his promise aforesaid ; and in case he shall refuse, she can again commence an action against him, based upon said original promise and his final refusal to perform it. And it seems to me that it is unnecessary and unjust under the circumstances to compel her thus to humiliate herself and then proceed, as she would doubtless be compelled to, to another long and tedious trial to secure her rights.

The truth of the case is, as I read the testimony, that the defendant changed his mind, sometime in the early fall of 1899, and did not from the time of such change intend to marry the plaintiff at all. And it requires no great stretch of the imagination to infer that he purposely disabled himself, just before the day finally fixed upon for the wedding, in order to have an excuse for not fulfilling his agreement. If this were not so, the most natural thing in the world for him to have done, upon recovering from his temporary disability, would have been to have gone to the plaintiff and offered to fulfill his promise. But he never went near her after the day finally fixed for the wedding, and never even sent her any message by way of excuse or otherwise.

A former time than the 28th day of November, 1899, had been fixed upon for the marriage, but it was postponed until fall, upon a flimsy excuse which the defendant made. There is much other testimony, coming from the defendant himself, which very strongly tends to show that for some time before the final fixing of the wedding-day the defendant was losing his affection for the plaintiff and was seeking in some way to evade the performance of his promise. It also appears, inferentially, at least, that his mother and other near relatives were strongly opposed to the marriage and influenced him against it.

Again, the granting of a new trial being a matter which rests in the sound judicial discretion of the court, it follows that a party is not necessarily entitled thereto because of errors committed during the jury trial. *Goodell* v. *Fairbrother*, 12 R. I. 233 ; *Collier* v. *Jenks*, 19 R. I. 493. If the court can see that substantial justice has been done, and that in all

probability a new trial would not produce a different result, it should not put the parties to the expense and trouble of such a trial.

In the case at bar the plaintiff could safely rely upon the defendant's letters alone to prove her case, in so far as the marriage engagement is concerned.    In his testimony on the witness-stand, also, he did not in effect deny the engagement, or that the time for the marriage was fixed as aforesaid.    He gave the plaintiff an engagement ring, and put it on her finger ; he furnished her with several hundred dollars with which to procure her wedding outfit ; he gave her valuable presents ; he introduced her to a friend as '' the future Mrs. Corey ; '' he told her brother, during the early summer of 1899, that he should be his brother-in-law before the leaves fell ; and in many other ways, by speech and conduct, he recognized the plaintiff as his betrothed.    And in view of this state of facts it would seem like putting an unnecessary burden upon her to be again called upon to prove her right to compensation for his neglect and refusal to fulfill his marriage engagement.

To sum up my views as to the law question involved, then, I will say that, treating the defendant's conduct hereinbefore referred to as amounting to an absolute refusal on his part to marry the plaintiff, as I feel fully warranted in treating it under the evidence, there was no occasion for the plaintiff to either offer to marry the defendant, or to request him to marry her, before bringing this action for damages.

After a long and very full trial of the case, the jury found a verdict in favor of the plaintiff and assessed her damages at $5,000, and I fail to see any sufficient reason for disturbing their finding.

*Cooke & Angell*, for plaintiff.

*George A. Littlefield*, for defendant.